UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
Eastern Division

| | |
|---|---|
| Security National Insurance Company,<br><br>    Plaintiff,<br><br>v.<br><br>H.O.M.E., Inc., and<br>Lauris Molbert,<br><br>    Defendants. | Case Number 3:17-cv-00060<br><br>**REPLY IN SUPPORT OF<br>SECURITY NATIONAL'S MOTION<br>FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The parties' dispute regarding whether the D&O Policy's insured vs. insured exclusion bars coverage in this case boils down to this: there is no *reasonable* interpretation in which the counterclaim filed by director Kristi Benz and her two siblings does not qualify as "any claim" by any insured person. Nor is there any *reasonable* interpretation in which that counterclaim does not at least qualify as "any claim" that "in any way involve[es]" any claim by any insured person. Under the plain language of the D&O Policy, coverage for such claims is expressly excluded, and nothing in the broad and unqualified language of the insured vs. insured exclusion is uncertain or unclear. "Any claim" unambiguously includes the counterclaim at issue here.

In arguing that this clear language is nevertheless ambiguous, Defendants do not identify any particular word or phrase of the exclusion that is difficult to understand or subject to multiple interpretations. They instead seek to alter the language of the D&O Policy or insert their claimed "expectations" and understandings of the exclusion's "purpose." Defendants also repeatedly argue that Security National's advancement of defense expenses (at Defendants' urging, and subject to an express reservation of rights) is somehow itself "evidence" of the exclusion's ambiguity.

1

Under North Dakota law, none of these arguments can trump the plain language of the D&O Policy. Nor can Defendants find or create ambiguity from sources outside the language of the parties' contract. Because the plain language of the D&O Policy unambiguously excludes coverage for the counterclaim brought by Kristi Benz and her two siblings, Defendants' extrinsic arguments are immaterial and unnecessary to the Court's decision in this case. Following the Eighth Circuit's application of materially identical language in *Jerry's Enterprises, Inc. v. U.S. Specialty Insurance Co.*, 845 F.3d 883 (8th Cir. 2017), this Court should hold that coverage for the counterclaim is excluded by the D&O Policy's insured vs. insured exclusion.

Alternatively (or in addition), the Court should hold that Defendants have not established a "management practices wrongful act," as required for coverage under the policy. As described more fully in Security National's prior briefing, the D&O Policy provides coverage only for wrongful acts that are committed by an insured person while "acting *solely* in their capacity as director [or] officer" of the insured company. And here, the counterclaim expressly alleges that Lauris Molbert was acting in at least *six other capacities* when he committed the conduct in question. It is those clear allegations that necessarily control this Court's analysis regarding the duty to advance defense expenses. Defendants' new (and internally contradictory) argument that the Court must instead wait until there has been a final adjudication about whether Lauris acted in any of these capacities makes no sense in the context of deciding an insurer's *defense* obligations. It is also contrary to settled North Dakota law. Accordingly, this Court should hold that Defendants have failed to satisfy their burden of establishing coverage under the D&O Policy.

For one or both of these reasons, the Court should grant summary judgment in favor of Security National and declare that the counterclaim against Lauris Molbert is not covered. The Court should also dismiss Defendants' counterclaims against Security National.

**ARGUMENT**

I.   **The Insured vs. Insured Exclusion Clearly Precludes Coverage for the Counterclaim Brought By Insured Person Kristi Benz.**

It is hard to conceive of an exclusion written in broader or clearer terms than the insured vs. insured exclusion contained in the D&O Policy. The D&O Policy expressly states that Security National shall not be liable for *any* payment in connection with *any* claim in *any* way involving "*any* claim by . . . *any* insured person in *any* capacity." D&O Policy [ECF No. 1-3] pp. 17-18 (emphases added). The North Dakota Supreme Court has held the word "any" generally means "all" or "every" and demonstrates a "broad and expansive meaning." *See Anderson v. Anderson*, 591 N.W.2d 138, 140 (N.D. 1999); *accord In re SRC Holding Corp.*, 545 F.3d 661, 668 (8th Cir. 2008); *see also Stout v. Simpson*, 124 P. 754, 756 (Okla. 1912) (stating the adjective "any" "precludes all limitation upon the kind or class . . . intended to be included"). There is nothing unclear or ambiguous about the broad scope or application of that language. *See BancorpSouth Inc. v. Federal Ins. Co.*, 873 F.3d 582, 588 (7th Cir. 2017) ("a broad exclusion of coverage does not equate to ambiguity"); *Latterell v. Progressive Northern Ins. Co.*, 801 N.W.2d 917, 921 (Minn. 2011) ("just because contractual language is broad does not mean it is ambiguous"). The phrase "any claim" plainly includes the counterclaim at issue here, and Defendants have identified no language taking that counterclaim outside the scope of the D&O Policy's broad exclusion.

The Defendants' argument is instead based on trying to "split" the counterclaim up into three separate claims. *See* ECF No. 29 pp. 2, 6, 13, 14, 17 (arguing or assuming that this case involves multiple "claims"). The Eighth Circuit's decision in *Jerry's* forbids this. As the court explained in that case, the insured's "repeated references to the separate claims of Sullivan and her daughters betray the language as actually contracted by the parties." *See Jerry's*, 845 F.3d at 888. As is true in this case, the policy in *Jerry's* expressly defined the term "claim" to mean a "civil

proceeding" – that is, "the entirety of the Sullivan lawsuit." *Id.*; *see also* D&O Policy p. 33 (defining "claim" in a materially indistinguishable manner). Applying the terms as written, the Eighth Circuit concluded that it had "no room under the language of the exclusion clause to apply the clause to some parts of a lawsuit but not others." *Id.* The Eighth Circuit therefore held that the entire lawsuit (which was jointly brought by one insured person and two non-insureds) was *unambiguously* excluded from coverage. *See id.* The same result should apply here.[1]

Despite the Eighth Circuit's clear holding in *Jerry's*, Defendants insist that additional specificity is still required to make the exclusion unambiguous in this case. Defendants argue, for example, that if Security National meant to exclude coverage for a multi-party claim, Security National "could have written its insured vs. insured exclusion to preclude coverage for any civil proceeding in which an insured person participates in any way." ECF No. 20 p. 14. But Security National *did* include language to that effect. The D&O Policy expressly excludes coverage for any "claim" "in any way involving" a claim by an insured person. *See* D&O Policy pp. 17-18. When you substitute the Policy's definition of "claim" (a "civil proceeding"), *see* D&O Policy p. 33, and the common meaning of "involve" ("to engage as a participant"), *see American Heritage*

---

[1] Defendants admit that the operative language of the D&O Policy's exclusion is materially the same as the language applied in *Jerry's*. *See* ECF No. 29 p. 18 (agreeing that the initial part of the *Jerry's* exclusion is similar to the initial language in Security National's exclusion). But in a confusing example of contradictory reasoning, Defendants first argue that there are differences in the two policies' "exception clauses" that distinguish this case from *Jerry's*. *See* ECF No. 29 p. 18. Then, on the very next page (presumably in response to Security National's demonstration that the D&O Policy actually *does* include the same exception language as *Jerry's*), Defendants argue that the exception clauses "provide no guidance at all" on how to interpret the base language of the exclusion. *See* ECF No. 29 p. 19 n.4.

Certainly, Defendants are free to argue in the alternative. But if the exception clauses should be ignored – as Defendants now contend – we are left only with the initial language of the exclusions. *And Defendants admit that this initial language of the two policies is functionally identical*. The sole textual basis upon which Defendants tried to distinguish this case from *Jerry's* has therefore been discarded, and there is no reason not to follow the Eighth Circuit's holding in *Jerry's* here.

*Dictionary of the English Language* 950 (3rd ed. 1992), into that provision, you get exactly the type of policy language that Defendants agree would exclude coverage for this matter. *Compare* ECF No. 20 p. 14 (stating policy could have excluded coverage "for any civil proceeding in which an insured person participates in any way") *with* D&O Policy pp. 17-18 (excluding coverage for "any [civil proceeding]" in which an insured person "in any way [engaged as participant].").

Notably, this additional layer of exclusionary language contained in the D&O Policy – which excludes coverage for any claim "relating to" or "in any way involving" any claim by an insured person – also answers and refutes all of Defendants remaining arguments. For example, the D&O Policy contemplates and addresses the hypothetical situation in which Kristi and her other siblings might have filed separate counterclaims, and excludes coverage regardless of the form in which the counterclaims were brought. *See* D&O Policy pp. 17-18 (excluding coverage for any claim "relating to" a claim by an insured person); *see also* D&O Policy p. 33 (requiring all claims involving interrelated wrongful acts to be treated as a single claim). The D&O Policy also expressly informs the insured that the mere presence or involvement of one insured person will bar coverage for the entire civil proceeding, thereby precluding any *reasonable* "expectations" to the contrary.[2] *See* D&O Policy pp. 17-18 (excluding coverage for any "claim," "in any way involving" a claim by an insured person). Finally, this language also distinguishes this case from

---

[2]  As Defendants now admit, the reasonable expectations doctrine has only ever been recognized by two justices of the North Dakota Supreme Court, more than 40 years ago. *See* ECF No. 29 p. 15 n.3 (citing *Mills v. Agrichemical Aviation, Inc.*, 250 N.W2d 663 (N.D. 1977)). In more recent decisions, the North Dakota Supreme Court has "expressly declined" to adopt that doctrine. *See Huether v. Nodak Mut. Ins. Co.*, 871 N.W.2d 444, 448 (N.D. 2015); *Nationwide Mut. Ins. Cos. v. Lagodinski*, 683 N.W.2d 903, 911-12 (N.D. 2004). However, even if the doctrine of reasonable expectations did exist, there would be no justification for applying it here. Lauris Molbert is a licensed attorney, *see* Molbert Answer [ECF No. 8] ¶3, who was fully capable of reading and understanding the D&O Policy. H.O.M.E., Inc. is likewise a sophisticated entity, which owned an insurance agency as one of its two subsidiaries. *See* H.O.M.E. Answer [ECF No. 6] ¶2.

the *Level 3* decision and other out-of-circuit cases cited by Defendants. *Compare* D&O Policy pp. 17-18 (excluding coverage for any claim "relating to" or "in any way involving" any claim by an insured person) *with Level 3 Communications v. Federal Ins. Co.*, 168 F.3d 956, 957 (7th Cir. 1999) (excluding only liability "on account of" a claim brought by an insured). Thus, contrary to Defendants' argument, the *Level 3* decision does not provide a reasonable interpretation of the policy language at issue here. Defendants have identified no court that has construed the broad exclusion contained in the D&O Policy in the way Defendants propose.

Because the language of the D&O Policy's exclusion is clear on its face, and subject to only one reasonable interpretation, "there is no room for construction" in this case. *Ziegelmann v. TMG Life Ins. Co.*, 607 N.W.2d 898, 900 (N.D. 2000). Accordingly, to the extent Defendants now argue that they need to conduct additional discovery regarding the parties' "contracting intent" (after previously claiming that interpretation of the policy is a purely legal matter "particularly amenable to summary judgment," *see* ECF No. 20 p. 6), that argument should be rejected. *See Kuperus v. Willson*, 709 N.W.2d 726, 731 (N.D. 2006) ("The parties' intention must be ascertained from the writing alone if possible"); *Hanneman v. Continental Western Ins. Co.*, 575 N.W.2d 445, (N.D. 1998) ("If the contract is self-explanatory and subject to only one meaning, our inquiry is at an end."). The Court should also reject Defendants' attempt to replace or contradict the clear language of the policy with assertions about its supposed "purpose." [3] *See, e.g., Intelligent Digital*

---

[3] In discussing the insured vs. insured exclusion's supposed purpose, Defendants claim Security National has not cited any cases applying the exclusion to a dispute between directors of different corporate entities. *See* ECF No. 29 p. 24. But that is incorrect. *Peoplesupport Rapid Text v. Illinois Union Insurance Co.*, cited by Security National, applied the exclusion to a claim brought by a subsidiary director against parent company directors – similar to the counterclaim at issue here. *See* 2009 WL 10314275, at *8 (C.D. Cal. 2009). A number of other courts have also applied the exclusion in similar situations. *See, e.g., Strategic Capital Bancorp v. St. Paul Mercury Ins. Co.*, 2010 WL 3025146, at *2 (C.D. Ill. 2010); *Murray v. Loewen Group*, 133 F.Supp.2d 1110, 1117 (E.D. Wis. 2001).

6

*Systems, LLC v. Beazley Ins. Co.*, 906 F.Supp.2d 80, 94 (E.D.N.Y. 2012), *aff'd at* 2017 WL 4127540 (2nd Cir. 2017) ("the exclusion's rationale does not trump its text").

Because the D&O Policy is clear and unambiguous, all of the extrinsic arguments and assertions offered by Defendants are rendered immaterial, and must be disregarded. *See Kuperus*, 709 N.W.2d at 731 ("If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language."); *Wisness v. Nodak Mut. Ins. Co.*, 806 N.W.2d 146, 152 (N.D. 2011) ("[W]e do not look outside the language in the policy at issue to find an ambiguity"). The plain language of the D&O Policy clearly excludes coverage for the counterclaim brought by insured person Kristi Benz and her two siblings.[4] The Court should grant summary judgment in favor of Security National.

## II. The Insureds Cannot Satisfy the Sole Capacity Requirement Necessary for Coverage under the D&O Policy.

In their opposition brief, Defendants do not dispute that the counterclaim alleges Lauris acted in seven different capacities – six of which are not insured under the D&O Policy. *See* Counterclaim ¶¶79-83, 87-89. Nor do Defendants dispute that the counterclaim alleges conduct that was simultaneously committed in all of Lauris's overlapping roles. *See* Counterclaim ¶¶93-104. In light of these facts, there is simply no way to construe the counterclaim as alleging actions taken "solely" and exclusively in Lauris's capacity as a director and officer of H.O.M.E., as required for coverage. *See* D&O Policy p. 15 (defining "management practices wrongful act").

---

[4] Although Defendants argue that "a person not trained in the law or in the insurance business" would be unable to understand this language, they neglect to tell the Court that they are a licensed attorney and owner of an insurance agency, respectively. *See* Molbert Answer [ECF No. 8] ¶3, H.O.M.E. Answer [ECF No. 6] ¶2. Defendants also ignore the fact that all relevant terms of the exclusion are expressly and clearly defined – making this rule of construction inapplicable. *See Martin v. Allianz Life Ins. Co.*, 573 N.W.2d 823, 826 (N.D. 1998) (stating the understanding of a non-law-trained person applies "where a term is undefined"). Importantly, Defendants also fail to identify any portion of these definitions that they find confusing or are unable to understand.

Although Defendants argue that Counts VI and VII of the counterclaim allege *duties* or *obligations* that were owed solely in Lauris's capacity as a director, that argument misstates the relevant question.  The focus of the D&O Policy is on the *conduct* or *wrongful act* that the insured person is alleged to have committed.  *See* D&O Policy pp. 11-12 (providing coverage for wrongful *acts*); p. 15 (defining "management practices wrongful act" in terms of misstatements, errors, neglect, and *breaches* of duty).  And here, there is no dispute that the *conduct* Lauris is alleged to have taken in breach of his duties as a director is the *same conduct* Lauris is alleged to have taken in his multiple outside capacities.[5]  *See* Counterclaim ¶¶143, 145, 152 (relying on conduct "described above" to allege breaches in Counts VI and VII); Counterclaim ¶¶116, 123, 130, 137 (reciting identical actions as operative conduct breaching multiple fiduciary duties).

Defendants insist, however, that "there has not yet been an adjudication" of whether Lauris engaged in any of these capacities, and that Security National cannot rely upon mere *allegations* of multiple capacities in order to deny coverage.  *See* ECF No. 29 pp. 7-8; *see also* ECF No. 29 p. 11 (trying to refute Security National's treatment of the *Wintermute* decision on the same basis).  But Defendants' argument makes no sense.  It is also contrary to established North Dakota law.  In determining an insurer's *defense* obligations, the Court obviously has to look at the allegations

---

[5] It is these express allegations of actions in multiple capacities that distinguishes this case from the decisions cited in Defendants' opposition brief.  In *Homebank*, the claimants appear to have premised their entire complaint on actions taken by the insured person "as their banker."  *See Homebank of Arkansas v. Kansas Bankers Sur. Co.*, 2008 WL 2704670, at *4.  In *Carlson & Lyter*, the face of the complaint clearly alleged that the insured persons were acting solely in their official capacity as board members when terminating the claimant's employment.  *See Carlson & Lyter Distributing, Inc. v. U.S. Liability Ins. Co.*, 2014 WL 2864815, at *9 (D. Minn. 2014).

The remaining decision cited by Defendants – *D'Amelio v. Federal Ins. Co.*, 2004 WL 937328 (D. Mass. 2004) – does not actually address or apply the policy language at issue here.  The policy in *D'Amelio* covered any acts taken by a director "in his insured capacity."  *See id.* at *3.  The policy in *D'Amelio* did not require that the actions be committed "solely" in that capacity.

of the counterclaim, rather than proven conduct.  As stated by the North Dakota Supreme Court:

> [T]he duty to defend and the duty to indemnify are effectively determined by looking at different stages of the underlying lawsuit.  The duty to indemnify is premised upon the ultimate resolution of the underlying lawsuit and the actual basis for any liability of the insured.  The duty to defend, however, arises as soon as the insured is sued, and accordingly is determined on the basis of the allegations in the injured claimant's complaint.

*Tibert v. Nodak Mut. Ins. Co.*, 816 N.W.2d 31, 43-44 (N.D. 2012).  If the Court waited until after the conduct was proven (as proposed by Defendants), an insurer's defense obligation could never be decided until after that defense was already completed.  Lauris also would not be entitled to a finding of coverage in his favor, because as he admits, there has not yet been an adjudication that he acted "in any capacity" – *including his insured capacity as a director and officer*.

Applying the clear allegations of the counterclaim, the Court should conclude that it does not state a claim for a "management practices wrongful act."  Accordingly, Defendants have not established their right to coverage under the D&O Policy, and summary judgment should be granted in favor of Security National.

**III.    Security National's Prior Advancement of Defense Expenses Does Not Demonstrate an Ambiguity and Does Not Constitute an Admission of Coverage.**

Finally, Defendants contend that the mere fact that Security National agreed to advance defense expenses (at Defendants' urging) is itself evidence that the D&O Policy is ambiguous or that coverage must exist.  *See* ECF No. 29 pp. 1, 24-25.  In effect, Defendants ask this Court to do away with the well-established and accepted procedure of a defense under a reservation of rights, and conclude that Security National's agreement to advance defense expenses can now be used against it.  The Court should reject the insureds' short-sighted and unsupported invitation.  *See Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 863-64 (8th Cir. 2012) (rejecting similar argument); *see also* 46 C.J.S. Insurance § 1627 (describing defense under reservation of rights).

9

Notably, at no point in their brief do Defendants dispute that the advancement of defense expenses was done pursuant to an express reservation of rights. *See* ECF No. 26-11 (specifically reserving rights in conjunction with offer to advance expenses). In fact, H.O.M.E.'s own attorney expressly confirmed the parties' "mutual understanding" that all parties would be "reserving their rights as to coverage and defense." *See* ECF No. 26-12. Defendants then accepted more than $147,000 in defense expenses based on that understanding. *See* ECF No. 31 ¶7. For the very same attorney to now claim that Security National's payment of expenses under that reservation of rights can be converted into some sort of "admission of coverage" is absurd. Defendants cite absolutely no authority that would allow them to treat Security National's payment in this unfair manner.

## CONCLUSION

For all those reasons stated herein and in Security National's prior briefing, this Court should grant summary judgment in favor of Security National, and enter an order declaring that Security National has no obligation to pay any loss incurred by H.O.M.E., Inc. or Lauris Molbert in connection with the counterclaim. The Court should also dismiss Defendants' counterclaims against Security National.

    Respectfully submitted,

    GREGERSON, ROSOW, JOHNSON & NILAN, LTD.

Dated: December 4, 2017    By: /s/ Daniel A. Ellerbrock
    Joseph A. Nilan, Esq.
    Daniel A. Ellerbrock, Esq.
    100 Washington Square, Suite 1550
    Minneapolis, MN 55401
    Phone: (612) 338-0755
    Fax: (612) 349-6718
    jnilan@grjn.com
    dellerbrock@grjn.com

*Attorneys for Security National Insurance Company*